[756 NYS2d 209]

Christian H. Gomez, Respondent-Appellant, v Neil C. Bicknell, Defendant, and Bicknell Advisory Services, Inc., Appellant-Respondent.

Second Department, December 23, 2002

*Mischel, Neuman & Horn, P.C.,* New York City (*Scott T. Horn* of counsel), for appellant-respondent.

*Wilson, Elser, Moskowitz, Edelman & Dicker, LLP,* New York City *(Edward J. Boyle* and *Peter J. Larkin* of counsel), for respondent-appellant.

**OPINION OF THE COURT**

CRANE, J.

This case presents us with the opportunity, the first in this Department of the Appellate Division, to express our view of the law of damages for an employee's breach of the duty of loyalty in converting to himself a corporate opportunity. It allows us to contrast the law of damages applicable to an employer's recovery for breach of an employee's covenant not to compete after the termination of his employment.

The defendant, Bicknell Advisory Services, Inc. (hereinafter BAS), appeals, and the plaintiff, Christian Gomez, cross-appeals, from a judgment entered after a jury trial. The jury awarded Gomez $601,189.91 on his cause of action to recover damages for breach of a profit-sharing agreement. It also awarded BAS $5,000 upon its counterclaim to recover damages for Gomez's breach of his duty of loyalty. On his cross appeal, Gomez seeks further relief on his claim for a 50% equity interest in BAS, and he seeks to set aside the jury verdict on BAS's first counterclaim for breach of the duty of loyalty. BAS on its appeal seeks further recovery on its counterclaim for Gomez's breach of the duty of loyalty, restoration of its second counterclaim to recover damages for breach of the covenant not to compete, and reversal of the award in favor of Gomez.

This Court concludes that Gomez's recovery was not supported by legally sufficient evidence; that he did not prove the existence of a fully-formed agreement to bestow on him a 50% equity interest in BAS; and that BAS failed to prove lost profits, a necessary element of its counterclaim to recover damages for

breach of the covenant not to compete. This Court remits the matter to the Supreme Court, Westchester County, for a new trial on damages only on BAS's counterclaim alleging the breach of the duty of loyalty because it was established by legally sufficient evidence, and the trial court erred in its charge on the law of damages. In any event, the jury's award of only $5,000 on this counterclaim was against the weight of the evidence.

FACTS

BAS by its president and sole shareholder, the codefendant Neil C. Bicknell, hired Gomez in its business of providing merger and acquisition advisory services specializing in the information services industry. A letter dated February 5, 1995, specified Gomez's starting salary subject to increase pursuant to an incentive formula. The letter ended on an optimistic note: "We have discussed and look forward to offering you future equity participation in the business at a mutually agreeable time." By separate agreement dated February 6, 1995, Gomez accepted a provision prohibiting competition with BAS for two years after termination of his employment for any reason.

Gomez requested from BAS in March and April 1996 a more regular working arrangement. At the same time, the acquisition of U.S. Pension Services, a deal that had been in the works for several years, was consummated. One of the conditions imposed by the investors in U.S. Pension Services was that Bicknell serve as Chief Executive Officer (hereinafter CEO) of the acquired company until such time as this company would be divested. In this context, BAS drafted a new working agreement with Gomez dated April 28, 1996. This working agreement increased Gomez's salary and provided for a division of income "[b]ased on results through calendar year-end" on the assumption that Bicknell would continue as CEO of U.S. Pension Services. Gomez was apportioned one third of the first $500,000 of income and one half of the excess.

BAS took its commission in the U.S. Pension Services acquisition in the form of an investment in the acquired entity. In the April 28, 1996, working agreement, BAS gave Gomez a 25% interest in that investment. When U.S. Pension Services was sold in 1998, Gomez received $700,000 as a result of this provision.

In January 1997 Gomez wrote to Bicknell demanding a basic salary of $200,000. This demand was not met, but when Gomez renewed the demand in January 1998 BAS agreed. At the same time, Gomez claimed that BAS also orally agreed to a 50/50 split of profits of BAS on a transaction-by-transaction basis.

Gomez further asserted that the parties had agreed on a split of equity, basically in BAS, by which Gomez was entitled to 50%. Gomez aggressively pursued the 50% equity. On May 20, 1998, Bicknell and Gomez met with Gomez's attorney, and on June 3, 1998, they met with an accountant to further their discussions concerning Gomez's equity participation. Leading up to these discussions, Gomez was threatening to resign. By the time of his resignation on June 8, 1998, Gomez had received no equity and no payout of profits, although two transactions had previously closed in that calendar year. His resignation accompanied delivery of the payment of BAS's compensation for a third deal with Sigma Marketing Group, Inc. (hereinafter Sigma), and its president, David Stirling, worth almost $500,000.

Stirling had offered to reveal the name of another prospect for a merger and acquisition transaction in Atlanta, Georgia, but not before the closing of the Sigma transaction. Gomez related this development to BAS. Then, several days before the scheduled June 5, 1998, closing of the Sigma sale, Stirling gave Gomez the name of the Atlanta prospect (Gordon Bailey & Associates). Gomez placed a nine-minute telephone call to Gordon Bailey & Associates from his home in the early morning of June 3, 1998, the same day he and Bicknell later met with the accountant to discuss equity participation. This was the posture of the relationship until the Sigma transaction closed, and Gomez resigned on June 8, 1998, ostensibly because he had not received his 50% equity interest. Some weeks later Gomez, now a former employee, secured a contract with Gordon Bailey & Associates, generating a gross fee of $353,000 and a net profit of $260,000.

PLEADINGS AND PROCEEDINGS

Gomez alleged a breach of the February 5, 1995, letter agreement in the first cause of action. The second cause of action, as amended, pleaded the breach of the working agreement dated April 28, 1996. The third cause of action claimed a breach of contract based on Gomez asserting a right to one half of the profits on a transaction-by-transaction basis. The fourth cause of action alleged promissory estoppel.

The trial court dismissed Gomez's claim that he was contractually entitled to an equity participation, assuming that it had been pleaded, on the ground that the trial evidence did not support it. Since his claim for an equity participation,

which Gomez placed under the first cause of action, was being dismissed, the trial court found no other basis to sustain that cause of action or the continued presence of Bicknell as a defendant.

The trial court denied BAS's motion to dismiss the second cause of action. For this claim, the trial court submitted to the jury, in the alternative, the question of whether the April 28, 1996, working agreement as written had been breached or whether it had been orally amended in 1998 and, if so, whether the amended version had been breached. This effectively embraced the third cause of action as well.

The trial court dismissed the fourth and final cause of action to recover damages based on promissory estoppel, for reasons that need no further discussion since Gomez is not raising any point of error with regard to this decision.

BAS interposed a number of counterclaims. Only the first and second are germane to its appeal. The first counterclaim alleges a breach of Gomez's duty of loyalty when he was still in the employ of BAS by diverting business opportunities belonging to it. The second counterclaim alleged a violation of the prohibition against competition in the February 6, 1995, letter agreement.

A the end of the defense case, Gomez moved to dismiss these counterclaims. The trial court granted that branch of the motion which was to dismiss the counterclaim alleging breach of the agreement not to compete because BAS failed to prove its loss of profits or other damages for this claim. On the other hand, the trial court denied that branch of the motion which was to dismiss the breach of loyalty counterclaim and rejected Gomez's argument, repeated on appeal, that since he did not acquire Gordon Bailey & Associates as a client until after he resigned, he could not be guilty of disloyalty, as alleged in the first counterclaim.

BAS had been advocating a disgorgement of Gomez's profits as the proper measure of damages for breach of loyalty, whereas Gomez contended that the correct measure was the loss of profits to BAS between June 3 and June 5, 1998, of which there was no proof. In a conference on damages, the trial court appropriately articulated that the jury must consider the profit made by Gomez in measuring the damages for breach of the duty of loyalty. When, however, the trial court charged the jury with respect to the first counterclaim, it told the jury "you may consider as a measure of damages the profits earned by Christian Gomez through his corporate entity in the trans-

action with Gordon Bailey and Associates." This gave the jury only an option to consider Gomez's profits. BAS's trial counsel took an exception on the ground that the damages which the jury must consider were, exactly, Gomez's profits.

The jury reached a verdict in favor of Gomez in the principal amount of $601,189.91 on his claim to recover damages for breach of the profit-sharing agreement as orally amended. The jurors affirmatively answered interrogatories as to whether the working agreement of April 28, 1996, had been modified in 1998 and whether BAS was in breach thereof. In compliance with the verdict sheet instructions, they did not reach the question of whether the unmodified April 28, 1996, agreement had been breached; they found that Gomez had breached his duty of loyalty, and they awarded BAS $5,000 therefor.

The Supreme Court rejected BAS's postverdict motion to set aside the award in favor of Gomez and the damages in its favor on the counterclaim for breach of the duty of loyalty as inadequate. The court was unpersuaded by BAS's argument that once the jury found a breach of the duty of loyalty, the measure of damages was disgorgement of profits. It reasoned that Gomez had not earned the fee from the diverted business until after his termination. In addition, the trial court erroneously stated that BAS had an opportunity to lear the identity of the prospect and solicit its business. The court also denied Gomez's cross motion to award no damages on this counterclaim.

## DECISION

### I. *Legal Sufficiency of the Evidence Supporting the Breach of Loyalty Counterclaim*

Gomez was told by Stirling, president of Sigma, that he would divulge the identity of a prospective client for a merger in Atlanta, but Stirling wanted the Sigma deal to close before he revealed the name. Obedient to his fiduciary obligation, Gomez shared this bit of intelligence with BAS. When the closing of the Sigma deal neared, however, Stirling revealed the name of the prospect to Gomez who, still on BAS's payroll, kept the name to himself. On June 3, 1998, before he came to BAS's office, he placed a nine-minute telephone call to the Atlanta prospect, Gordon Bailey & Associates. He told the prospect that he was finishing Stirling's closing, that he could not talk at that point, but that he would reinstate contact in a few more weeks. This amounts to a diversion of a corporate opportunity (*see Chemfab Corp. v Integrated Liner Tech.*, 263 AD2d 788, 789-790; *Maritime Fish Prods. v World-Wide Fish*

*Prods.,* 100 AD2d 81, 90-91; *see also Western Elec. Co. v Brenner,* 41 NY2d 291, 295; *Lamdin v Broadway Surface Adv. Corp.,* 272 NY 133, 138; *Mega Group v Halton,* 290 AD2d 673, 675-676; *American Map Corp. v Stone,* 264 AD2d 492, 493; *Bon Temps Agency v Greenfield,* 184 AD2d 280, 281). At least, there is a rational process by which the trier of the fact could so find (*see Szczerbiak v Pilat,* 90 NY2d 553, 556).

Gomez further argues that his breach of loyalty was not completed by the time he resigned. He suggests that several weeks went by before he reestablished contact with the Atlanta prospect. Therefore, according to Gomez, he was not disloyal during the period of his employment. To adopt such an argument would license any faithless employee to steal a corporate opportunity but conceal the theft until he or she has departed from employment. The cases do not sponsor such a result (*see Duane Jones Co. v Burke,* 306 NY 172, 189 ["(T)he individual defendants would not be relieved of liability for advantages secured by them, after termination of their employment, as a result of opportunities gained by reason of their employment relationship."]; *A & L Scientific Corp. v Latmore,* 265 AD2d 355, 356; *Westwood Chem. Co., Inc. v Kulick,* 570 F Supp 1032, 1037 n 1 [SD NY]).

## II. *Error in the Charge on Damages*

The Trial Judge charged the jury, in determining BAS's loss of profit and fixing damages on BAS's disloyalty counterclaim, that it "may" consider Gomez's profit, without guiding the jury as to what else it may consider. This contrasts wit the language the Trial Judge used in the charge conference that "[I]f there's a breach of duty of loyalty, on damages you must consider the profit of Mr. Gomez, and that would be the measure of damages for the defense." BAS's counsel, when he excepted to the charge in altered form as actually rendered, said "I would urge your Honor that the measure of damages is exactly what the employee's profits were." Under the circumstances of this case, the charge ultimately rendered was erroneous. It deprived BAS of the choice it had to select the measure of damages; it ignored the circumstance that the sole evidence of damages for this counterclaim was the fee Gomez derived from the Gordon Bailey & Associates transaction ($353,000) and the net profit he asserted that he realized ($260,000).

Years ago, in a comparable situation of a breach of fiduciary duty by way of trading on insider information, Chief Judge Fuld taught us that the remedy for breach of fiduciary duty is not only to compensate for the wrongs but to prevent them (*see*

*Diamond v Oreamuno,* 24 NY2d 494, 498). The remedy, not unlike applying a constructive trust, is disgorgement for breach of the loyalty an employee owes to the employer (*see Western Elec. Co. v Brenner, supra*). This is not to say that other methods of calculating an employer's damages are unavailable. As an alternative to an accounting of the disloyal employee's gain, a calculation of what the employer would have made of the diverted corporate opportunity is an available measure of damages (*see Harry R. Defler Corp. v Kleeman,* 19 AD2d 396, 403-404, *affd* 19 NY2d 694). The choice of remedy belongs to the employer (*see Western Elec. Co. v Brenner, supra* at 295, citing Restatement [Second] of Agency § 421A, Comment on Clause [*c*]).

It is in this choice that the distinction becomes obscured between the measure of damages for breach of a covenant not to compete and for breach of the duty of loyalty. For the contractual damages of breach of the noncompetition obligation, an employer must prove its own loss of profits, not what the employee's profits were (*see Michel Cosmetics v Tsirkas,* 282 NY 195, 200; *Pencom Sys. v Shapiro,* 193 AD2d 561; *Borne Chem. Co. v Dictrow,* 85 AD2d 646, 650; *Weinrauch v Kashkin,* 64 AD2d 897, 898; *McRoberts Protective Agency v Lansdell Protective Agency,* 61 AD2d 652, 655; *Santa's Workshop v Sterling,* 2 AD2d 262, 267, *affd* 3 NY2d 757). Once a party wronged by a violation of a restrictive covenant has proven its net loss of profits, the wrongdoer may rebut by "showing with reasonable certainty the proportion of the loss of profits attributable to the wrongful act of the defendant and recoverable as damages as opposed to the proportion due to other causes" (*Borne Chem. Co. v Dictrow, supra* at 651). Also involved in the calculation of an employer's net profits in this context is consideration of its own generalized expenses of administration and overhead (*see 342 Holding Corp. v Carlyle Constr. Corp.,* 31 AD2d 605, 606; *American Elecs. v Neptune Meter Co.,* 30 AD2d 117, 119, vacated and republished 30 AD2d 529; *but cf. Lenobel, Inc. v Senif,* 252 App Div 533, 536; *Vitex Mfg. Corp. v Caribtex Corp.,* 377 F2d 795, 798 [3d Cir]; *Resolute Ins. Co. v Percy Jones, Inc.,* 198 F2d 309, 312 [10th Cir]; *see also Sayer v Wilstrop,* 200 App Div 364, 377 [concurring opinion]).

None of these details supported BAS's counterclaim alleging breach of the noncompete clause. However, none was required to support the counterclaim for damages for breach of the duty of loyalty. For disgorgement of Gomez's profits stemming from disloyalty, all BAS needed to show was the gross fee Gomez

received. We conclude that BAS met the prima facie burden of showing damages by simply proving the $353,000 gross fee that Gomez was paid. The burden then shifted to Gomez to demonstrate the amount of his direct costs in generating this gross income because he is in exclusive possession of that information. BAS would then have the opportunity to question the reasonableness of any deduction (*cf. Support Sys. Assoc. v Tavolacci,* 135 AD2d 704, 707; *Borne Chem. Co. v Dictrow, supra* at 651; *Pickering v El Jay Equip. Co., Inc.,* 108 Idaho 512, 517-518, 700 P2d 134, 139-140; *but see E.W. Bruno Co. v Friedberg,* 28 AD2d 91; *Matter of Cohen (Four Way Features),* 168 Misc 2d 91, *affd* 240 AD2d 225; *Westwood Chem. Co., Inc. v Kulick, supra* at 1038 n 3).

In view of the way the trial court charged the jury on the damages to be awarded for the breach of the duty of loyalty and because the award of $5,000 is against the weight of the evidence (*see Nicastro v Park,* 113 AD2d 129), we remit the case for a new trial on damages only for the first counterclaim.

III. *Legal Insufficiency of Proof of the Counterclaim to Recover Damages for Breach of the Covenant Not to Compete*

BAS contends that the trial court erred in withholding from the jury its second counterclaim. We assume, without deciding, that the proof of every element of this counterclaim except damages was placed before the jury. However, as the trial court found, BAS made no effort to prove its loss of profits as a result of any such breach. Therefore, this counterclaim was properly dismissed. BAS's argument that nominal damages were available, while accurate (*see Kronos, Inc. v AVX Corp.,* 81 NY2d 90, 95), was never raised before the trial court. Therefore, it has not been preserved for appellate review and we decline to reach it in the exercise of our discretion (*see Mann v All Waste Sys.,* 293 AD2d 656, *lv denied* 98 NY2d 610; *Matter of ELRAC, Inc. v Edwards,* 270 AD2d 414, 415; *cf. Weiner v MKVII-Westchester,* 292 AD2d 597, 598; *Block v Magee,* 146 AD2d 730, 732).

IV. *Gomez's Recovery for Breach of the Working Agreement as Orally Amended is Not Supported by Legally Sufficient Evidence*

BAS is correct in arguing that there is not legally sufficient evidence to support the jury's finding that the April 28, 1996, working agreement had been modified in 1998 and that BAS breached the modified agreement. In order for a breach of contract to exist, there must be a meeting of the minds on the agreement said to have been breached. Mutual assent evincing

the intention of the parties to form a contract is essential, and without it, a party may not be held to the contract (*see Maffea v Ippolito*, 247 AD2d 366, 367; *Platt v Portnoy*, 220 AD2d 652, 653; *Franklin v Carpinello Oil Co.*, 84 AD2d 613).

The theory of Gomez's recovery was that the profit-sharing provisions of the April 28, 1996, working agreement were modified from a one-third share of the first $500,000 of profits determined at the end of the year to 50% of profits on a transaction-by-transaction basis. While there may have been a fair jury question on the 50% aspect of this modification, there was no proof that BAS agreed to the aspect of timing. According to Gomez's own testimony, the payout timing had not been accepted by BAS because, as Gomez testified, Bicknell said neither yes nor no. At best, there existed Gomez's request or expectation that he would be paid his share on a transaction-by-transaction basis. This will not suffice (*see Platt v Portnoy*, *supra*).

At trial, Gomez recognized that BAS had never assented to the timing of the payout of Gomez's claimed profit share, but rather, was relying on Bicknell's silence or failure to say no. Silence, absent a duty to speak, cannot constitute an acceptance (*see Matter of Albrecht Chem. Co. (Anderson Trading Corp.)*, 298 NY 437, 440; *Josephine & Anthony Corp. v Horwitz*, 58 AD2d 643; *Karlin v Avis*, 457 F2d 57, 61-62 [2d Cir], *cert denied* 409 US 849; *L.B. Kaye Assoc., Ltd. v Jews for Jesus*, 677 F Supp 160, 166, *affd* 854 F2d 1314 [2d Cir]; *cf. J.P.A. Realty v Citi Fin. Mtge. Co.*, 293 AD2d 447; *Russell v Raynes Assoc. Ltd. Partnership*, 166 AD2d 6, 15). The lack of acceptance by BAS is substantiated by two neutral facts: first, BAS never paid Gomez on the transactions in 1998 that were completed after the alleged oral modification, and second, profits were not susceptible of calculation until the end of the year when all of the income and expenses contemplated by the April 28, 1996, agreement could be known.

BAS likewise opposes Gomez's breach of contract claim on a theory that Gomez's breach of the duty of loyalty forfeits his right to his profit share. Gomez raises a serious issue of preservation for appellate purposes. It is unnecessary to resolve the preservation question because Gomez's recovery on this claim was unsupported by legally sufficient evidence.

In an effort to rescue at least a portion of the jury verdict in his favor, Gomez contends that even if the oral modification is not sustainable, he is entitled to his profit-sharing under the provisions of the April 28, 1996, working agreement: one third of the first $500,000 and one half of the profit above that.

However, Gomez was required to stay in employment until the end of the year under the plain language of the April 28, 1996, working agreement. Since he did not remain until then, he forfeited payment (*see Truelove v Northeast Capital & Advisory,* 268 AD2d 648, 650, *affd* 95 NY2d 220, 225; *D'Amato v Morgan Stanley Dean Witter Discover & Co.,* 268 AD2d 392). Furthermore, the terms of the agreement required the continued activity of Bicknell as CEO of U.S. Pension Services. The failure of this condition authorized BAS to withhold Gomez's profit participation (*see Hall v United Parcel Serv. of Am.,* 76 NY2d 27, 36-37; *Weiner v Diebold Group,* 173 AD2d 166, 167; *Zolotar v New York Life Ins. Co.,* 172 AD2d 27, 32).

V. *The Trial Court's Dismissal of Gomez's Claim for Equity Participation*

The trial court correctly dismissed Gomez's claim for a 50% equity interest in the business of BAS. The claim was never pleaded. Even if the complaint is stretched to contain such a claim, the evidence was legally insufficient to support it. There were numerous open conditions on which agreement had not been reached. Indeed, the parties were meeting with an attorney and an accountant as late as June 3, 1998, seeking to resolve these items. There simply was no meeting of the minds on Gomez's equity participation (*see Maffea v Ippolito, supra; Platt v Portnoy, supra; Franklin v Carpinello Oil Co., supra*).

For the foregoing reasons, the judgment is reversed, on the law, the complaint and the second through fifth counterclaims are dismissed, the jury's findings of fact as to liability on the first counterclaim of BAS are affirmed, the first counterclaim is severed, and the matter is remitted to the Supreme Court, Westchester County, for a new trial on the issue of damages on that counterclaim.

FEUERSTEIN, J.P., SCHMIDT and ADAMS, JJ., concur.

Ordered that the judgment is reversed, on the law, with costs, the complaint and the second through fifth counterclaims are dismissed, the jury's findings of fact as to liability on the first counterclaim of Bicknell Advisory Services, Inc., are affirmed, the first counterclaim is severed, and the matter is remitted to the Supreme Court, Westchester County, for a new trial on the issue of damages on that counterclaim.