■ ORATOR WOODWARD, Respondent, v TAN HOLDING CORP., Appellant. [820 NYS2d 126]—

In an action for a judgment declaring that the plaintiff is entitled to retain the deposit tendered in connection with the proposed sale of real property, the defendant appeals from a judgment of the Supreme Court, Putnam County (O'Rourke, J.), dated February 7, 2005, which, after a nonjury trial, declared that the plaintiff was entitled to retain the deposit.

Ordered that the judgment is reversed, on the law and the facts, with costs, and it is declared that the plaintiff is not entitled to retain the deposit.

The plaintiff owns a parcel of approximately 170 acres of land in Patterson, New York. In the late summer or early fall of 2001, Peter Oberlink, the defendant's vice-president, began discussing the prospect of purchasing the property with the plaintiff's real estate broker. After certain terms including the purchase price and a $50,000 deposit had been agreed upon, the plaintiff retained an attorney to prepare a purchase agreement. Thereafter, on December 11, 2001, the plaintiff's attorney forwarded a draft purchase agreement to the defendant's attorney. Under the terms of the agreement, the defendant was afforded a 60-day feasibility period within which to determine whether or not the property was suitable for its intended use, and to elect to terminate the agreement. In the event that the defendant elected to terminate within the feasibility period, the plaintiff was to return the $50,000 deposit (less the sum of

$10,000) which the defendant was required to tender upon signing the agreement. However, in the event that the defendant defaulted after the expiration of the feasibility period, the agreement entitled the plaintiff to retain the deposit as liquidated damages. The 60-day feasibility period was to run from the "[e]ffective [d]ate" of the agreement, which was defined as "the last date on which all of the parties hereto have executed this [a]greement."

Oberlink signed the agreement on the defendant's behalf on or about January 14, 2002, and tendered the required deposit. However, through counsel, the defendant conditioned acceptance upon the conditions set forth in a proposed rider (hereinafter the first rider). Among other things, the first rider proposed modifying the feasibility period by providing that the defendant would have 60 days from the delivery of a survey to determine the suitability of the property, which it intended to use as part of a tax-deferred property exchange pursuant to Internal Revenue Code (26 USC) § 1031. In addition, the first rider permitted the defendant to assign the agreement without the plaintiff's written consent. According to Oberlink, the assignment provision was included because the defendant needed the flexibility to assign the contract in order to satisfy time limitations on tax-free property exchanges. The plaintiff's attorney countered by proposing several changes to the first rider. The changes proposed by the plaintiff's attorney included defining the feasibility period as 30 days from the delivery of a survey, or "60 days from the [e]ffective [d]ate, whichever is later." Although the plaintiff subsequently signed the purchase agreement on February 26, 2002, he did not sign the first rider because the parties were still in negotiations over its terms.

The defendants' attorney thereafter apparently drafted a second version of the rider (hereinafter the second rider), which allegedly was signed by Oberlink. The second rider again modified the feasibility period, now defining it as 30 days after the delivery of a survey, or 60 days after the effective date, "whichever is earlier." The second rider also retained an assignment provision, which stated that "[t]he parties agree that the purchaser shall be permitted to assign the [a]greement, without the written consent of the [s]eller." Although the plaintiff signed the second rider on or about March 1, 2002, he unilaterally added the word "not" to the assignment provision, so that it stated that the "purchaser shall *not* be permitted to assign the agreement" (emphasis added).

A dispute subsequently arose between the parties over their varying interpretations as to when the feasibility period was to

expire. On July 17, 2002, the plaintiff's attorney advised the defendant's attorney that the feasibility period had expired, and that he would be releasing the deposit to the plaintiff. The defendant's attorney maintained that the feasibility period had not expired because the defendant had not received a proper survey, and thereafter notified the plaintiff's attorney that the defendant was exercising its right to terminate the agreement.

The plaintiff then commenced this action seeking a judgment declaring that he was entitled to retain the defendant's deposit, and the defendant counterclaimed for return of the deposit. After a nonjury trial, the Supreme Court found that the effective date of the parties' contract was February 26, 2002, when the plaintiff signed the purchase agreement, and that the feasibility period expired 60 days after the effective date. The Supreme Court thus concluded that the defendant's attempt to terminate the contract in the summer of 2002 was untimely, and declared that the plaintiff was entitled to retain the deposit. We reverse.

In reviewing a judgment rendered after a nonjury trial, this Court may consider the record as a whole and grant the judgment warranted by the facts (*see Daimon v Fridman,* 5 AD3d 426 [2004]; *We're Assoc. Co. v Rodin Sportswear,* 288 AD2d 465 [2001]; *Ancewicz v Western Suffolk BOCES,* 282 AD2d 632 [2001]). Upon the exercise of our review power, we find that the evidence presented at trial failed to establish that the parties ever entered into a binding and enforceable contract for the sale and purchase of the subject property. "It is a fundamental principle of contract law that a valid acceptance must comply with the terms of the offer . . . and, if qualified with conditions it is equivalent to a rejection and counteroffer" (*Roer v Cross County Med. Ctr. Corp.,* 83 AD2d 861, 861 [1981]; *see Robison v Sweeney,* 301 AD2d 815 [2003]; *Lamanna v Wing Yuen Realty,* 283 AD2d 165 [2001]; *Ronan v Valley Stream Realty Co.,* 249 AD2d 288 [1998]). Here, since the defendant's acceptance of the purchase agreement was conditioned upon the plaintiff's agreement to the terms set forth in the first rider, it constituted a counteroffer. The plaintiff did not accept the defendant's counteroffer by signing the purchase agreement on February 26, 2002, because he did not accept the terms of the first rider, and the parties remained in negotiations over these terms. Accordingly, a contract was not formed on February 26, 2002.

Furthermore, a binding and enforceable contract was not created on or about March 1, 2002, when the plaintiff signed the second rider. Prior to signing the second rider, the plaintiff unilaterally modified one of its material terms by inserting the word "not" into the assignment provision, thereby prohibiting

assignment of the agreement without his written consent. The plaintiff's modification of the second rider constituted a counteroffer which the defendant never expressly accepted, and indeed was entitled to refuse by ignoring it (see *Winiarski v Duryea Assoc., LLC,* 14 AD3d 697 [2005]; *Gomez v Bicknell,* 302 AD2d 107, 116 [2002]; *J.P.A. Realty v Citi Fin. Mtge. Co.,* 293 AD2d 447 [2002]; *Lamanna v Wing Yuen Realty, supra; Harper v Rodriguez,* 272 AD2d 372 [2000]). Moreover, the record does not demonstrate that the defendant accepted the terms of the second rider, as unilaterally modified by the plaintiff, through "acquiescent conduct" (*Eldor Contr. Corp. v County of Nassau,* 272 AD2d 509, 509 [2000]). To the contrary, correspondence prepared by the defendant's attorney in the summer of 2002 indicates that the defendant believed that a contract had been formed in accordance with the terms set forth in the first rider. In the absence of evidence establishing the defendant's acceptance of the March 1, 2002, counteroffer, no contract was created, and the defendant was entitled to the return of its deposit. Schmidt, J.P., Krausman, Spolzino and Fisher, JJ., concur.