■ THOR PROPERTIES, LLC, Appellant, v WILLSPRING HOLDINGS LLC, Respondent. [988 NYS2d 47]—

Orders, Supreme Court, New York County (Jeffrey K. Oing, J.), entered on or about October 10 and October 25, 2013, which granted defendant's motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

Plaintiff Thor Properties brought this action for breach of contract to compel specific performance by defendant Willspring Holdings to sell it a mixed-used building in Manhattan. However, Willspring established that the parties' series of written and oral communications, made by their authorized principals, never formed a binding agreement, and, in light of the evidence in the record, Thor's unsupported allegations to the contrary are insufficient to raise a material issue of fact (*see European Am. Bank & Trust Co. v Schirripa*, 108 AD2d 684 [1st Dept 1985]).

The following events are not in dispute. On December 5, 2012, Thor emailed Willspring a letter of intent (LOI) offering to buy the property for $111 million under terms that included Willspring's transfer of the property free of liens. The December 5th LOI also provided that, unless Willspring countersigned and

returned it by December 7, Thor's offer would "be deemed withdrawn in its entirety."

The same day, Willspring emailed Thor to reject its offer, noting that Thor's purchase price fell short of other bids. Willspring also refused to transfer the property free of liens because it demanded Thor assume the existing mortgage on the property.

The parties continued negotiations on December 5 and 6. On the morning of the 6th, Willspring emailed Thor that it expected a modified LOI would be issued under which Thor increased its offer to $115 million and agreed to assume the mortgage, execute a long-form purchase agreement by December 11, 2012, and close by the end of the year.

Later on the 6th, Thor emailed a second LOI which increased the purchase price, but did not commit to executing the purchase agreement by December 11 or closing in 2012, and still required Willspring to deliver the property free of liens. The new LOI also required Willspring's countersignature and delivery by December 7.

Thereafter, Willspring responded by sending Thor a copy of its December 6th LOI which Willspring had marked up by hand and signed. Willspring deleted Thor's requirement that the seller convey title free of liens, and added the December 11 deadline for an executed purchase agreement. Modifying its demand for a closing by year's end, Willspring provided that the closing must occur within 30 days after the purchase agreement was signed but also provided that "[time was of the essence]" for closing.

Minutes later, Willspring's principal emailed Thor that he was "pleased that we have been able to agree [to] terms." He cautioned, however, that if there were any "[renegotiating]" then Willspring would "walk away promptly." About one hour thereafter, however, Thor emailed Willspring that "[w]e will be getting our response to your proposed changes to the [December 6th] LOI shortly."

While the parties continued discussions on the evening of December 6, on the morning of December 7 Willspring's principal emailed Thor that "[p]er our conversation last night . . . I understand our changes to [the December 6th] LOI are NOT acceptable to Thor as presented. Please send me a revised LOI with your suggested changes so I can have our attorney review them."

Later on December 7, Thor sent Willspring a new or third LOI which changed the terms of the marked-up December 6th LOI by giving Thor a unilateral right to adjourn the closing

date by 10 days, despite time being of the essence. The December 7th LOI sent by Thor also extended the deadline for a signed purchase agreement by two days, but limited Thor's assumption of the mortgage to the only exception to Willspring's obligation to deliver the property free of liens. The December 7th LOI stated that it required Willspring's countersignature and return by that day.

On the afternoon of December 7, a Friday, Willspring's principal emailed Thor that the "LOI changes you have put forth . . . [are] not what we agreed to" because "[w]e were very clear on the need to sign a contract early next week and . . . to close by year end." The Willspring principal acknowledged that Thor's offer expired that day but promised that he would contact Thor the following Monday, December 10, to "discuss where we go."

On December 10, however, Thor emailed Willspring a copy of the December 6th LOI that Willspring had marked up and signed, which now bore Thor's initials by Willspring's handwritten changes purportedly to show Thor's acceptance of the agreement that it had previously sought to modify. Willspring, however, contracted to sell its property to a third party.

The record demonstrates that the parties never came to terms and instead proposed a series of offers and counteroffers to which they never mutually agreed. Moreover, Thor's belated attempt to form a binding contract on December 10 was a nullity. To enter into a contract, a party must clearly and unequivocally accept the offeror's terms (*S.S.I. Invs. v Korea Tungsten Min. Co.*, 80 AD2d 155, 158 [1st Dept 1981], *affd* 55 NY2d 934 [1982]). If instead the offeree responds by conditioning acceptance on new or modified terms, that response constitutes both a rejection and a counteroffer which extinguishes the initial offer (*Woodward v Tan Holding Corp.*, 32 AD3d 467 [2d Dept 2006]). The counteroffer extinguishes the original offer, and thereafter the offeree cannot, as Thor attempted on December 10, unilaterally revive the offer by accepting it (*Jericho Group, Ltd. v Midtown Dev., L.P.*, 32 AD3d 294, 299 [1st Dept 2006]).

While oral acceptance of a written offer can form a binding contract for the sale of real property (*Tymon v Linoki*, 16 NY2d 293, 298 [1965]), the record does not support Thor's claim that it unequivocally accepted the counteroffer that Wellspring set forth in the mark-up of the December 6th LOI, before that counteroffer terminated. Thor's email that it would respond to Willspring's changes to the December 6th LOI indicates that Thor had not accepted those changes and intended further negotiation.

Moreover, Willspring's email on the morning of December 7 confirms that Thor had rejected Willspring's counteroffer. At the time, Thor did not claim that an agreement had been reached, but instead responded to Willspring's email by submitting the December 7th LOI, which it described as another "offer." The December 7th LOI neither refers to the marked-up December 6th LOI as a binding agreement nor unconditionally accepts the counteroffer embodied in Willspring's handwritten changes.

Thor claims that on December 6 it orally accepted Willspring's changes to the December 6th LOI, but asked Willspring to consider some "slight modifications" that Thor would put into writing the next day. However, the changes in the December 7th LOI were not, as Thor claims, "immaterial," because they afforded Thor the unilateral right to adjourn the closing. If a real estate contract provides that the time of closing is of the essence, "performance on the specified date is a material element . . . and failure to perform on that date constitutes . . . a material breach" (*New Colony Homes, Inc. v Long Is. Prop. Group, LLC*, 21 AD3d 1072, 1073 [2d Dept 2005]). By modifying a material term in Willspring's counteroffer, Thor rejected it and proposed a counteroffer that Willspring never accepted. Accordingly, the complaint for breach of contract was properly dismissed. Concur—Sweeny, J.P., Acosta, Renwick, Andrias and Freedman, JJ.