MARIE TRIMBOLI et al., Respondents, *v.* SCARPACI FUNERAL HOME, INC., et al., Appellants.

Second Department, November 15, 1971.

*Daniel J. Coughlin* (*Thomas Grimes* of counsel), for appellants.

*Jacob Miller* (*Hoberman, Sussman & Bloom* and *Samuel J. Sussman* of counsel), for respondents.

HOPKINS, J. The plaintiffs sued the defendants to recover damages for personal injuries suffered as the result of the defendants' negligence. The issue of liability was tried separately and the plaintiffs obtained a verdict in their favor. The defendants appealed from the ensuing interlocutory judgment and moved for a stay of the assessment of damages. The stay was granted. The appeal was not successful and the interlocutory judgment was affirmed (*Trimboli* v. *Scarpaci Funeral Home*, 34 A D 2d 1103). Nearly a year after the trial of the issue of liability[1], the plaintiffs were awarded damages totaling $41,000, for which judgment was entered against the defendants on September 21, 1970.

The defendants claim on this appeal that the judgment improperly includes interest from the date of the entry of the interlocutory judgment (Oct. 28, 1969) and that the interest was computed erroneously at the rate of 7½% per annum rather than at the rate of 6%. The Special Term on the defendants'

---

1. The interlocutory judgment was entered October 28, 1969; the trial of the issue of damages was held during September 10–16, 1970.

motion to resettle the judgment decided against the defendants' claims. We agree with the decision of the Special Term.

We treat first the question of the correct date from which interest should be calculated. "Interest from verdict to entry of judgment was permitted by New York courts in certain situations long before there was statutory authorization for its award" (5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5002.01). CPLR 5002 provides that "interest shall be recovered upon the total sum awarded * * * in any action, from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment." This language the defendants say means that interest in the present case must be computed from the date of the verdict awarding damages (Sept. 16, 1970).

In the usual case in which damages are recovered for personal injuries the defendants' construction of the statute is undoubtedly sound, for interest is not allowable in such actions before the time of verdict (cf. CPLR 5001; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5001.07). In the usual case, however, the issues of liability and damages are tried together. But in the present case the issue of liability was tried separately in the court's discretion "in order to achieve a speedy and unprejudiced disposition" (CPLR 4011; see, also, CPLR 603). The verdict on the issue of liability was general in the sense that it was "one in which the jury finds in favor of one or more parties" (CPLR 4111, subd. [a]). Once an interlocutory judgment was entered on that verdict, the defendants were entitled to appeal (*Fortgang* v. *Chase Manhattan Bank,* 29 A D 2d 41; *Hacker* v. *City of New York,* 25 A D 2d 35; see, also, *id.* 26 A D 2d 400, affd. 20 N Y 2d 722).

Here the defendants not only appealed, but also secured a stay of the continuation of the trial leading to the determination of the plaintiffs' damages. Without the stay the plaintiffs' damages would have been quickly ascertained before the same jury which decided the issue of liability or another jury speedily convened. Even if the first jury were disbanded, the incidental delay in selecting the second jury would not have substantially prejudiced the plaintiffs. But here the defendants' action in obtaining a stay — a choice which they must have believed appeared to their advantage — resulted in a delay of nearly a year and a substantial prejudice to the plaintiffs.[2]

We should not enclose the words of the statute in such tight

---

2. Whether the interest rate is calculated at the rate of 7½% or 6%, the loss to the plaintiffs on the aggregate verdicts of $41,000 is considerable.

compartments or technical definitions as to defeat justice; we are commanded that they are to "be liberally construed to secure the just, speedy and inexpensive determination of every civil judicial proceeding " (CPLR 104). The intent of the statute awarding interest is to indemnify the plaintiffs for the non-payment of what is due to them. Hence, the delay in the rendition of damages may properly be charged against the party causing it, in considering the allowance of interest, and the courts have followed this rule in applying the terms of the statute (cf. *Beyer* v. *Murray*, 33 A D 2d 246; *Monette* v. *Bonsall*, 29 A D 2d 839, 840; *Lindwall* v. *Talent Cab Corp.*, 51 Misc 2d 381, affd. 27 A D 2d 647; *Ariola* v. *Petro Trucking Corp.*, 50 Misc 2d 216), even as the factor of delay was given effect at common law (cf. *Bull* v. *Ketchum*, 2 Denio 188; Ann. 15 ALR 3d 411).[3] We think, accordingly, that interest was properly computed from the date of the interlocutory judgment.

The defendants' contention as to the rate of interest rests on their distinction between judgments for damages due to personal injuries and judgments for damages arising from the extension of credit. Under their argument only the latter judgments should carry interest at the rate of $7\frac{1}{2}\%$ and other judgments should remain at the traditional rate of 6%. We are unable to make the distinction for which the defendants contend.

CPLR 5004 declares that "interest shall be at the legal rate, except where otherwise prescribed by statute." There is no statute which specially fixes the rate of interest in an action to recover damages for personal injuries. Nor is there any statute which indicates that interest in an action on a promissory note or other contract based on the extension of credit should be computed at a higher rate of interest than in other actions. Indeed, CPLR 5003, directing that every money judgment shall bear interest from the date of its entry, indicates to the contrary; and the legislative history suggests that all prior distinctions between judgments, in the accrual of interest, have thus been eliminated (5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5003.02).

Before the enactment of CPLR 5004, interest recoverable under the Civil Practice Act (§§ 480, 481) equalled the legal rate of 6% set by section 370 of the General Business Law

---

3. In our view, in a split trial, except in the unusual case, the administration of justice is furthered by continuing the trial before the same jury which decided the issue of liability, in order to ascertain the damages. Otherwise, the advantages of a split trial are largely lost (cf. *Mercado* v. *City of New York*, 25 A D 2d 75).

(*Taylor* v. *Wing*, 84 N. Y. 471; *McNaughton* v. *International Diesel Elec. Co.*, 286 App. Div. 1021). The drafters of CPLR 5004 intended that the definition of '' legal rate '' should be referable to the provisions of the General Business Law (Third Preliminary Report of Advisory Committee on Practice and Procedure, p. *92*; N. Y. Legis. Doc., *1959*, No. 17, p. 92; Siegel, Supplementary Practice Commentary on CPLR 5004 [McKinney's Cons. Laws of N. Y., Book 7B, CPLR 3401–5100, pocket part]). Though section 370 of the General Business Law was repealed in 1964 (General Obligations Law, § 19–101, subd. 5), it was substantially re-enacted in subdivision 1 of section 5–501 of the General Obligations Law.

Subdivision 1 of section 5–501 of the General Obligations Law was changed in 1968 (L. 1968, ch. 349, § 1) so that the Banking Board of the State would be empowered to prescribe the rate of interest '' except as otherwise provided by law * * * upon a loan or forbearance of any money, goods, or things in action ''; if no rate were thus prescribed, the legal rate would be 6%. The Banking Board fixed the interest rate at 7½% per annum upon such '' loan or forbearance * * * made on or after February 16, 1969 '' (3 NYCRR 4.1).

No legislative direction since 1968 has been made which demonstrates that interest on judgments shall draw a different rate from the one established by the Banking Board, or even that only the judgments arising out of actions based on the transactions described in section 5–501 of the General Obligations Law should enjoy the 7½% rate of interest. In the absence of a legislative direction, we think that the intent manifested at the time of the enactment of CPLR 5004 that the '' legal rate '' should be referable to the formerly applicable section of the General Business Law or its successor cannot be overborne.

The interest on all judgments, whether tort or contract derived, was the same before the amendment to the statute in 1968. The Legislature, in delegating authority to the Banking Board, recognized the need to adjust interest rates as economic conditions fluctuate and to make the change more rapidly than the legislative process would permit. Economic conditions affect the community as a whole, even as salaries increase or decrease as a result of monetary forces; so do hospital expenses; and the loss to the victim of a tort is measured generally by the same financial values as the loss incurred by a lender through the failure of an obligor to meet the terms of an extension of credit. There is, in short, no compelling reason for us to find that the Legislature intended to leave the interest rate at 6% for judg-

ments (see, also, *Rachlin & Co.* v. *Tra-Mar, Inc.,* 33 A D 2d 370).

The order of the Special Term should be affirmed, with $10 costs and disbursements.

RABIN, P. J., MUNDER, LATHAM and SHAPIRO, JJ., concur.

Order of the Supreme Court, Kings County, dated November 20, 1970, affirmed, with $10 costs and disbursements.