[844 NYS2d 293]

KAREN L. VAN NOSTRAND, Appellant, v ROSARIO FROEHLICH et al., Respondents.

Second Department, July 17, 2007

APPEARANCES OF COUNSEL

*Sanders, Sanders, Block, Woycik, Viener & Grossman, P.C.,* Mineola (*Mark R. Bernstein* of counsel), for appellant.

*Michael E. Pressman,* New York City (*Robert H. Fischler* of counsel), for respondents.

## OPINION OF THE COURT

DILLON, J.

This appeal presents the issue of when prejudgment interest is to be computed under CPLR 5002 in an automobile-related personal injury action where the serious injury threshold is an issue. We have not previously discussed at the appellate level the interplay between a plaintiff's entitlement to prejudgment interest under CPLR 5002 and the threshold injury requirements of Insurance Law § 5102 (d). For reasons set forth below, we find that prejudgment interest is to be calculated from the date common-law liability attaches in favor of the plaintiff, either by default, summary judgment, or bifurcated liability trial, even though the plaintiff has yet to establish the existence of a serious injury under the Comprehensive Motor Vehicle Insurance Reparations Act (Insurance Law art 51 [hereinafter the No-Fault Law]).

Relevant Facts and Prior Proceedings

The vehicle driven by the plaintiff, Karen L. Van Nostrand, was rear-ended on September 2, 1999, while stopped at a red light on the eastbound portion of Hempstead Turnpike in East Meadow, Long Island. The offending vehicle was operated at the time of the collision by the defendant Rosario Froehlich. The Supreme Court issued an order dated March 8, 2002, granting the plaintiff summary judgment on the issue of common-law liability, and directed that there be a trial on the issue of damages. The order was served on counsel for the Froehlichs with notice of entry on April 17, 2002.

At the trial on the issue of damages, a jury awarded Van Nostrand $150,000 for past pain and suffering and $400,000 for future pain and suffering, as reflected by a judgment entered by the clerk of the Supreme Court, Nassau County, on January 17, 2004. On appeal, this Court, inter alia, ordered a new trial on the issue of damages unless Van Nostrand filed a stipulation agreeing to reduce the damages to the sums of $100,000 for

past pain and suffering and $200,000 for future pain and suffering (*see Van Nostrand v Froehlich,* 18 AD3d 539 [2005]). Van Nostrand agreed to the reduction in damages by stipulation executed June 8, 2005, and submitted a proposed amended judgment with notice of settlement in accordance with this Court's decision and order. The interest on the verdict, as reduced by this Court, computed at 9% from April 17, 2002, totaled $7,150. The amended judgment was entered June 21, 2005.

By order to show cause dated July 19, 2005, the Froehlichs moved to modify the amended judgment. The Froehlichs argued that prejudgment interest had been improperly computed from the common-law liability finding of April 17, 2002, and that in automobile actions such as this, interest should instead be computed from the date that Van Nostrand established both liability and the existence of a serious injury.[1]

The Supreme Court granted the Froehlichs' motion to correct the interest contained in the amended judgment. A second amended judgment was entered December 23, 2005, reflecting interest measured from the date of Van Nostrand's damages verdict. The difference in the interest award was $3,500.

Van Nostrand appeals. We reverse the second amended judgment entered December 23, 2005, deny the motion, and reinstate the amended judgment entered June 21, 2005.

CPLR 5002 and Its Interpretive Case Law

The statute that entitles plaintiffs to prejudgment interest in civil proceedings is CPLR 5002. It is not to be confused with CPLR 5001, which speaks to preverdict interest for breach of contract measured from the date of breach (*see De Long Corp. v Morrison-Knudsen Co.,* 14 NY2d 346, 348 [1964]; *155 Henry Owners Corp. v Lovlyn Realty Co.,* 231 AD2d 559, 560 [1996]) and CPLR 5003, which speaks to postjudgment interest measured, of course, from when a monetary claim is reduced to judgment (*see Pay v State of New York,* 87 NY2d 1011, 1013 [1996]; *Matter of Matra Bldg. Corp. v Kucker,* 19 AD3d 496 [2005]).

---

1. The order to show cause invoked CPLR 5015, which authorizes a court to relieve a party of a judgment on the ground of excusable default, in this case the default being the Froehlichs' failure to object to the amended judgment prior to its settlement. The order to show cause also invoked CPLR 5019, which authorizes the court to cure mistakes, defects, or irregularities that appear in judgments. While Van Nostrand opposed the order to show cause on the ground, inter alia, that the Froehlichs did not establish an excusable default and merit in the settlement of the amended judgment, these issues are outside the scope of the instant appeal.

CPLR 5002 provides that interest shall accrue "from the date the verdict was rendered . . . to the date of entry of final judgment." The purpose of the statute is not to be punitive as against defendants (see *Love v State of New York,* 78 NY2d 540, 544 [1991]). Rather, the intent of the statute is to merely indemnify plaintiffs for the cost of the defendants having the use of another person's money between the time it is determined that compensation is due until judgment (see *Love v State of New York, supra; Trimboli v Scarpaci Funeral Home,* 37 AD2d 386, 389 [1971], *affd* 30 NY2d 687 [1972]; *Bermeo v Atakent,* 241 AD2d 235, 247 [1998]; *Malkin v Wright,* 64 AD2d 569, 570 [1978]).

The language of CPLR 5002 measures interest from "verdict . . . report or decision" to the date of the entry of a final judgment. The terms "verdict," "report" or "decision" generally refer to the date that liability is established, even though the damages verdict is reached at a later time (see *Rohring v City of Niagara Falls,* 84 NY2d 60, 68 [1994]; *Love v State of New York, supra* at 542). Courts engage, in effect, in a legal fiction that damages are known and become a fixed obligation from the moment liability is resolved (see *Rohring v City of Niagara Falls, supra* at 68). Indeed, CPLR 5002 contains no language requiring the amount of damages to be ascertained for interest to accrue (see CPLR 5002; *Gunnarson v State of New York,* 70 NY2d 923, 925 [1987]; *Garigen v Morrow,* 303 AD2d 956 [2003]). Interest accrues independent of whether either party causes a delay in reaching the damages trial (see *Love v State of New York, supra* at 544; *Sawtelle v Southside Hosp.,* 305 AD2d 659, 660 [2003]; Siegel, NY Prac § 411 [3d ed]).

The plaintiffs' entitlement to compensation is determined at three potential times during litigations, triggering interest under CPLR 5002. The first is when the defendant is held liable to the plaintiff as a result of a bifurcated liability trial, subject to the conduct of a damages trial. When trials are bifurcated, prejudgment interest is computed from the date of the liability finding (see *Love v State of New York, supra* at 544; *Gunnarson v State of New York, supra* at 924; *Trimboli v Scarpaci Funeral Home, supra* at 389; *Malkin v Wright, supra* at 570). The second circumstance is when the defendant is found liable to the plaintiff by means of summary judgment under CPLR 3212 (see *Lifshits v Variety Poly Bags,* 18 AD3d 622, 624 [2005], *lv dismissed* 5 NY3d 847 [2005]; *Eisenberg v Rockland County,* 19 AD3d 536 [2005]; 8B Carmody-Wait 2d § 63:89 ["What consti-

tutes a verdict, report, or decision"]). The third circumstance where interest can accrue under CPLR 5002 is when a judgment is awarded in favor of a plaintiff upon default of the defendant in failing to appear and answer, subject to an inquest to determine damages, or from when a defendant's answer is stricken (*see Abbas v Cole*, 44 AD3d 31 [2007] [decided herewith]; *Diane v Ricale Taxi, Inc.*, 26 AD3d 232 [2006] [personal injuries incurred in automobile accident]; *Gordon v City of New York*, 188 Misc 2d 246, 249 [2001]).

The Serious Injury Threshold—a Question of Liability or Damages?

In *Denio v State of New York* (7 NY3d 159 [2006]), the plaintiff incurred, as a result of his automobile accident, traumatic brain injury and multiple fractures of the jaw, face, pelvis, and ankles. There could never be any question that the plaintiff in *Denio* sustained injuries meeting the serious injury threshold of Insurance Law § 5102 (d). The trial was bifurcated, and interest under CPLR 5002 was to be computed, according to the Court of Appeals, from the date of the liability verdict. No consideration was given by the Court of Appeals to whether the interest computation should be delayed to the finding of the trier of fact that a serious injury had been incurred. However, the existence of a "serious injury" under the Insurance Law is not always as clear as it was in *Denio*, as there is no shortage of automobile cases where the issue of serious injury falls into an arguably gray area.

The leading authority on when prejudgment interest is to be computed under CPLR 5002 is *Love v State of New York (supra)*. In *Love*, the Court of Appeals held that prejudgment interest is to run from the point in a litigation "when the plaintiff's right to be compensated for the damages he or she sustained becomes fixed in law" (*Love v State of New York, supra* at 544). The Court of Appeals then explained that the right to compensation becomes fixed "[i]n a bifurcated trial . . . when the verdict holding the defendant liable is rendered," with the "only remaining question [being] the precise amount that is due" (*Love v State of New York, supra* at 544).

The essence of whether prejudgment interest should be computed from a finding of common-law liability in favor of the plaintiff, or from a finding of serious injury, is therefore inescapably dependent upon whether proof of serious injury is considered by law to be "liability" or "damages." If a question of liability, the running of prejudgment interest would need to

abide the plaintiff's proof that a serious injury was incurred. If the serious injury threshold is a question of damages, prejudgment interest would compute from the establishment of bifurcated liability, because the Court of Appeals has expressly said so (*see Love v State of New York, supra* at 544; *accord Denio v State of New York, supra* at 163).

There has been a lack of unanimity among the four departments of the Appellate Division as to whether serious injury is a matter of liability or damages, which necessarily implicates CPLR 5002. The differences between the departments on this issue are not found in decisions addressing CPLR interest awards. Instead, the split between the departments is exposed in the automobile cases dealing with whether or not plaintiffs who have been granted summary judgment on liability are required to nonetheless establish serious injury at their damages trials. The Second and Third Departments took one position on this issue, while the First and Fourth Departments took a different position, although more recently the First Department appears to have switched sides and has left the Fourth Department standing alone.

This Court has determined that the serious injury threshold is decidedly an issue of damages, not liability. The seminal cases are *Perez v State of New York* (215 AD2d 740 [1995]) and *Zecca v Riccardelli* (293 AD2d 31 [2002]). In *Perez*, the trial court dismissed the plaintiff's complaint at the conclusion of the plaintiff's evidence at a bifurcated liability trial on the ground that the plaintiff failed to prove that he had sustained a serious injury under Insurance Law § 5102. This Court reversed, holding that "the liability phase of a bifurcated trial is not the proper juncture at which to adjudicate issues regarding the severity of . . . injuries" (*Perez v State of New York, supra* at 741). The Court noted that pursuant to PJI 1:35A (Supp), juries in liability trials are routinely instructed to apportion fault among parties and to determine proximate cause without regard to injuries or medical treatment (*id.*). This Court specifically held that the extent of plaintiffs' injuries, and whether such injuries qualify as serious under the Insurance Law, "should generally be left for the damages phase of the trial" (*id.* at 742).

Seven years later, in *Zecca v Riccardelli (supra)*, this Court held that when a finding is rendered in favor of a plaintiff on liability by means of summary judgment, even upon default of the defendant in opposing the motion, the plaintiff is nevertheless required to establish the existence of a serious injury at the

trial on damages. The Court presented a more detailed analysis of its reasoning in *Zecca* than it did in *Perez*. In *Zecca,* this Court noted that an overriding purpose of the No-Fault Law was to eliminate from courts common-law tort actions involving minor personal injuries that fall beneath a defined threshold (*see e.g. Licari v Elliott,* 57 NY2d 230, 236 [1982] [minor, mild or slight limitations of use of body functions or systems are insignificant]). The courts were responsible for vetting serious injury automobile cases by application of basic summary judgment principles to avoid unnecessary jury trials where the injury is clearly minor (*see Zecca v Riccardelli, supra* at 33-34, citing *Licari v Elliott, supra* at 237). Viewed in this context, this Court held that if summary judgment in favor of plaintiffs on default automatically satisfied the requirements of the serious injury threshold, courts would be abdicating their responsibility under the No-Fault Law by allowing recoveries for minor injuries (*see Zecca v Riccardelli, supra* at 34-35). As a result, the only logical conclusion under the No-Fault Law is to treat serious injury as quintessentially an issue of damages (*see also e.g. Abbas v Cole, supra; Sheehan v Marshall,* 9 AD3d 403, 404 [2004]; *Taylor v Dell Coffee Servs.,* 306 AD2d 460, 460-461; *Canfield v Beach,* 305 AD2d 440, 442 [2003]; *Coumbes v Taylor,* 298 AD2d 351, 352 [2002]).[2]

If anything, this Court's discussions in *Perez* and *Zecca* failed to address an additional conceptual reason that the serious injury threshold is properly categorized as a question of damages, not liability. The well-accepted reasons for the enactment of the No-Fault Law were to promote the prompt resolution of injury claims, limit costs to insurers, and alleviate unnecessary burdens on the courts (*see Pommells v Perez,* 4 NY3d 566, 570-571 [2005], citing Comprehensive Automobile Insurance Reparations Act, added by L 1973, ch 13; Governor's Mem approving L 1973, ch 13, 1973 McKinney's Session Laws of NY, at 2335). To control the pressing volume of automobile litigation within the state, the Legislature divided the universe of claims arising out of the use and operation of motor vehicles into two broad categories objectively defined in Insurance Law § 5102 (d); namely, plaintiffs whose injuries qualify as "serious," and hence, are

---

**2.** One narrow exception recognized by this Court exists when a defendant opposes a default motion and fails to include the serious injury threshold among the meritorious defenses discussed (*see Beresford v Waheed,* 302 AD2d 342, 343 [2003]). The holding of *Beresford* is consistent with this Court's reasoning (*id.*).

compensable, and plaintiffs whose injuries fall short of being "serious" and which are not compensable (see Insurance Law § 5102 [d]; 5104; *Licari v Elliott, supra*). The determination of whether a particular plaintiff establishes a serious injury, or fails to do so, necessarily involves an examination of the parties' evidence on damages. Such evidence is independent of the fault-based issues present in a bifurcated liability context such as duty, breach of duty, and proximate causality between acts or omissions on the one hand and an accident on the other. In other words, a plaintiff's injuries meet or fall short of the established threshold regardless of who is at fault behind the wheel.

Decisions of the Third Department also treat the serious injury threshold as an issue of damages (see e.g. *Kelley v Balasco,* 226 AD2d 880 [1996]; *Ives v Correll,* 211 AD2d 899 [1995]).

In 2001, the First Department took an opposing view in *Porter v SPD Trucking* (284 AD2d 181 [2001]) and *Maldonado v DePalo* (277 AD2d 21, 22 [2000]). *Porter* held that a default judgment necessarily resolved the question of serious injury in favor of the plaintiff subject to defendants' right to contest the amount of plaintiffs' "real damages" at inquest (see *Porter v SPD Trucking, supra* at 181). Similarly, *Maldonado* held that summary judgment favoring plaintiffs necessarily decides the serious injury threshold in the plaintiffs' favor (see *Maldonado v DePalo, supra* at 22). However, not long after this Court's determination in *Zecca v Riccardelli* (*supra*), the First Department overruled its own holdings in *Porter* and *Maldonado* in 2003 with its decision in *Reid v Brown* (308 AD2d 331 [2003]). By virtue of *Reid v Brown,* the First Department now holds that motor vehicle plaintiffs who obtain summary judgment on "fault" liability without opposition from defendants must still separately establish the existence of serious injuries (see *Reid v Brown, supra* at 332) during the damages phase of the litigation. Presumably, since *Reid* overruled both *Porter* and *Maldonado,* the same reasoning should now apply in the First Department to actions where the plaintiffs obtain judgment by default.

The Fourth Department walks a fine line apart from the other departments. Successful fault-based motions for summary judgment in favor of motor vehicle plaintiffs are considered partial summary judgments on the issue of "negligence," as distinguished from "liability" which includes both negligence and serious injury (see *Ruzycki v Baker,* 301 AD2d 48, 51 [2002]). Parties in the Fourth Department who concede "liability" in

motor vehicle actions therefore waive the opportunity to contest serious injury issues (*see Simone v City of Niagara Falls,* 281 AD2d 923 [2001]). Under this rationale, the Fourth Department measures prejudgment interest under CPLR 5002 as running from the plaintiff's establishment of liability, meaning negligence, causation, and serious injury (*see Manzano v O'Neil,* 298 AD2d 829, 830 [2002];[3] *DePetres v Kaiser,* 244 AD2d 851, 852 [1997]).

We hold, consistent with our prior rulings in *Perez v State of New York* (*supra*) and *Zecca v Riccardelli* (*supra*) that serious injury is quintessentially an issue of damages, not liability. In the event a plaintiff at a damages trial fails to sustain the burden of establishing serious injury, the plaintiff is not entitled to any recovery despite proof of common-law liability. If the serious injury threshold is established by a plaintiff at a damages trial, the jury will render a monetary award that fairly and justly compensates the plaintiff for all loss (*see* PJI 2:277; *see generally McDougald v Garber,* 73 NY2d 246 [1989]). Regardless of whether damages are set at zero or at a liquidated amount, the calculation of interest can be made against the jury's determination of damages measured from the court's earlier finding of common-law liability, whether that liability is a product of a default, a stricken pleading, summary judgment or a bifurcated trial.

Our dissenting colleagues argue that proof of serious injury must be presented before the right to compensation becomes fixed at law (*see Love v State of New York, supra*) so as to trigger interest under CPLR 5002. We disagree with this argument and maintain that interest must be calculated from the date that common-law liability is determined in favor of the plaintiff. Four compelling reasons support our conclusion.

First, as already noted, the Court of Appeals expressly determined in *Love v State of New York* (*supra* at 542) that in personal injury actions, interest under CPLR 5002 runs from the date fault liability is established. While *Love* did not specifically address no-fault insurance implications, the Court of Appeals' decision in *Denio v State of New York* (*supra*) was automobile-related and incidentally measured CPLR 5002 interest from the date that common-law liability was resolved in the

---

**3.** The case of *Manzano v O'Neil* should be familiar to personal injury practitioners. It was one of the three serious injury actions examined by the Court of Appeals for other legal propositions in the often-cited *Toure v Avis Rent A Car Sys.* (98 NY2d 345 [2002]).

plaintiff's favor (*see Denio v State of New York, supra* at 163). A reading of *Love*, and to a lesser extent *Denio,* demonstrates that the Court of Appeals views prejudgment interest as running from the liability determination, with its computation held in abeyance until the amount of damages is later determined (*see Love v State of New York, supra* at 544). It follows, therefore, that if proof of a threshold injury is an issue of damages as this Court has consistently maintained, then interest is awardable from the finding of common-law liability, even if proof of a plaintiff's serious injury is extant or questionable. The actual computation of interest, retroactive to the liability finding, is not made until and unless the trier of fact determines that the serious injury threshold has, in fact, been affirmatively met at the damages trial.

Second, our dissenting colleagues, in concluding that prejudgment interest in a no-fault action is not triggered until the serious injury threshold is established, admittedly rely upon the Fourth Department's reasoning in *Ruzycki v Baker* (*supra*) and *Manzano v O'Neil* (*supra*). Implicitly, our dissenting colleagues depart from the stare decisis of this Department by which they are bound, wherein this Court has held the serious injury threshold to be a matter of damages that is litigated during the damages phase of an action (*see e.g., Sheehan v Marshall,* 9 AD3d 403, 404 [2004]; *Zecca v Riccardelli, supra; Taylor v Dell Coffee Servs.,* 306 AD2d 460, 460-461 [2003]; *Perez v State of New York, supra; see also* Uniform Rules for Trial Cts [22 NYCRR] § 202.42 [b]). As damages, threshold injury considerations are placed outside of the bifurcated liability finding which the Court of Appeals fixed in *Love* as triggering plaintiffs' right to compensation with prejudgment interest.

Our dissenting colleagues also suggest that the no-fault threshold is "[m]ost telling[ly]" grounded in liability rather than damages since, if an automobile plaintiff's verdict is overturned on appeal for insufficient proof at trial of serious injury, the remedy is dismissal of the complaint instead of a reduction of damages to $0 (dissenting op at 71). Such an argument raises a distinction without a difference. In any action where plaintiffs' verdicts on appeal are reversed on the grounds that damages were not established at trial, whether automobile-related or not, the appellate remedy is the dismissal of the plaintiffs' complaints rather than a reduction of damages to $0 (*see e.g. Pattison-Bolson Rug Serv. v Sloane,* 45 AD2d 862 [1974] [plaintiff's complaint for breach of contract dismissed on appeal

for failure to prove damages]; *Gomez v Bicknell,* 302 AD2d 107, 115, 117 [2002] [second counterclaim for breach of noncompete agreement dismissed on appeal for lack of proof at trial of damages]; *accord Sharratt v Hickey,* 20 AD3d 734 [2005] [complaint for defamation dismissed by trial court, affirmed on appeal, for plaintiff's failure to prove damages]). The remedy, therefore, does not support the conclusion of our dissenting colleagues that the division of liability and damages in actions arising out of the use and operation of motor vehicles (*see* Insurance Law § 5104) is any different from the division of liability and damages in other actions.

Third, there are various defenses to damages within and without the motor vehicle context which affect whether the plaintiffs, with common-law liability in their favor, are entitled to any monetary award or to no award. One such defense is the plaintiff's nonuse of available seatbelts (*see* Vehicle and Traffic Law § 1229-c [8]), which is strictly limited to the jury's determination of damages and is not considered in resolving issues of liability (*see Spier v Barker,* 35 NY2d 444, 450 [1974]; *Garcia v Tri-County Ambulette Serv.,* 282 AD2d 206, 207 [2001]; *Dowling v Dowling,* 138 AD2d 345 [1988]). Another common defense presented at damages trials concerns allegations that the plaintiff's injuries preexisted the subject accident (*see e.g. Califano v Automotive Rentals,* 293 AD2d 436, 437 [2002]; *Starace v Inner Circle Qonexions,* 198 AD2d 493, 494 [1993]) so as to negate proximate cause. Either of these defenses can reduce or even eliminate a plaintiff's entitlement to damages, yet the practice is to compute prejudgment interest from the liability finding and not to compute the interest award from the damages trial where seatbelt and preexisting injury defenses are litigated (*cf. Love v State of New York, supra*). There is no persuasive reason to treat threshold injury issues any differently.

Fourth, if prejudgment interest is not awardable in automobile actions until after the serious injury threshold is established, an untenable dichotomy would exist between those plaintiffs and all nonautomobile plaintiffs whose interest computations commence upon receiving a liability finding in their favor either as a result of default, summary judgment, or verdict from a trier of fact. If this Court were to accept the defendants' interpretation of CPLR 5002, it would be placing motor vehicle personal injury plaintiffs on an unequal footing from all other plaintiffs who seek damages for personal injuries not involving automobile ac-

cidents. Indeed, the defendant's interpretation of CPLR 5002 would create two unequal classes of automobile plaintiffs, where those incurring clearly-defined serious injuries would be entitled to interest earlier in their litigations than other plaintiffs whose injuries are more questionable. The better practice, in our view, is to treat all plaintiffs equally, by measuring prejudgment interest to which they are entitled from the same bright-line event of established liability in their favor, whether upon default of the defendant, summary judgment, or verdict in a bifurcated liability trial.

For all of the foregoing reasons, we conclude that the second amended judgment entered December 23, 2005, which calculated interest from the date of Van Nostrand's damages verdict, is in error. The earlier amended judgment entered June 21, 2005, which measured prejudgment interest from the order granting Van Nostrand summary judgment on common-law liability, was correct. Accordingly, the second amended judgment entered December 23, 2005, is reversed, on the law, the defendants' motion to modify the date of accrual of interest is denied, and the amended judgment entered June 21, 2005, is reinstated.

SPOLZINO, J. (dissenting). Prejudgment interest pursuant to CPLR 5002 runs from the date on which "the plaintiff's right to be compensated for the damages he or she sustained becomes fixed in law" (*Love v State of New York*, 78 NY2d 540, 544 [1991]). The question presented by this appeal is how that date is defined in an action to recover damages for personal injuries that is governed by the Comprehensive Motor Vehicle Insurance Reparations Act (Insurance Law art 51), commonly known as the No-Fault Law. In such a case, as I see it, the plaintiff's entitlement to damages cannot be considered to be "fixed in law" until the plaintiff has satisfied the serious injury threshold established by the No-Fault Law (*see* Insurance Law § 5104 [a]). Because that did not occur here until the damages phase of the trial, I would affirm the second amended judgment and therefore I dissent, respectfully.

The issue before us is presented in a rather ordinary automobile liability case that has a somewhat complex procedural history. The plaintiff was injured when her vehicle was struck from behind by a vehicle driven by the defendant. The plaintiff's motion for summary judgment was granted in March 2002. Although the record before us on this appeal does not include the motion for summary judgment, there is no dispute

that the motion did not resolve whether the plaintiff had suffered a serious injury within the meaning of the No-Fault Law. Consequently, the matter proceeded to trial on the issues of both serious injury and damages.

In April 2003, a jury awarded the plaintiff the sum of $550,000 in damages. On appeal, we found that the award of damages for pain and suffering deviated materially from what would be reasonable compensation and therefore reversed the judgment entered on the jury's verdict and ordered a new trial unless the plaintiff agreed to a reduction in those damages (see Van Nostrand v Froehlich, 18 AD3d 539 [2005]).

The plaintiff accepted our invitation to resolve the matter and an amended judgment was entered in June 2005. The amended judgment provided for interest from the date on which summary judgment had been granted, more than three years earlier. Arguing that prejudgment interest was not available from that date, the defendant moved for an order "amending and correcting" the judgment to provide for interest only from the date of the verdict. The Supreme Court granted the motion, to the detriment of the plaintiff in the amount of $3,500, a second amended judgment conforming to the order was entered in December 2005, and this appeal ensued.

Initially, the Supreme Court correctly considered the merits of the defendant's motion. Where the rate of interest is not litigated prior to the entry of judgment, the calculation of interest does not affect a substantial right of a party and an error in the calculation may be corrected by the court on a motion pursuant to CPLR 5019 (see Kiker v Nassau County, 85 NY2d 879 [1995]). Consequently, the defendant's failure to raise any objection to the proposed amended judgment at the time it was noticed for settlement does not defeat his right to such relief or require that his motion be treated as an application to vacate a default pursuant to CPLR 5015. The issue, therefore, is whether prejudgment interest was properly calculated from the date on which summary judgment was granted.

CPLR 5002 provides that "[i]nterest shall be recovered upon the total sum awarded, including interest to verdict, report or decision, in any action, from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment." The calculation of prejudgment interest in an action to recover damages for personal injuries is thus simple when the plaintiff's judgment is the result of a single jury verdict. The plaintiff is entitled to interest from the date of the verdict

(*see Rohring v City of Niagara Falls,* 84 NY2d 60, 69 [1994]; *Sawtelle v Southside Hosp.,* 305 AD2d 659 [2003]). Where the plaintiff's case is established other than by a jury verdict, however, or where a bifurcated trial results in two verdicts, the application of the statute is less clear.

It was in addressing this latter problem that the Court of Appeals defined the critical point at which prejudgment interest commences as the date on which "the plaintiff's right to be compensated for the damages he or she sustained becomes fixed in law" (*Love v State of New York,* 78 NY2d 540, 544 [1991]). Thus, where the plaintiff prevails prior to trial, on the basis of the defendant's default in answering, for example, or on summary judgment, prejudgment interest will run from the date on which the plaintiff's motion for such relief was granted (*see Diane v Ricale Taxi, Inc.,* 26 AD3d 232, 233 [2006]; *Lifshits v Variety Poly Bags,* 18 AD3d 622, 624 [2005]; *Hayes v City of New York,* 264 AD2d 610, 611 [1999]; *Sinn v Nationwide Mut. Ins. Co.,* 245 AD2d 1096 [1997]). Where, by contrast, that right is not established prior to trial, and the trial is bifurcated, the holding of *Love* is that "the plaintiff's right to be compensated" becomes fixed, and interest thus commences to run, upon a favorable verdict on the issue of "liability."

In reaching this conclusion, the Court of Appeals had no occasion to consider whether the determination of liability that initiates the plaintiff's entitlement to prejudgment interest requires, in the context of the No-Fault Law, a finding that the plaintiff sustained a serious injury. The more recent decision of the Court of Appeals in *Denio v State of New York* (7 NY3d 159 [2006]) does not fill this void. The issue in *Denio* was the rate at which prejudgment interest would accrue, not the date on which the plaintiff became entitled to recover interest. Although the effect of the Court of Appeals' determination was to affirm the imposition of prejudgment interest from the date of the "liability" verdict, which presumably means the date on which the defendant's negligence was established, that date was never an issue before the Court of Appeals. In fact, the parties stipulated to all aspects of the interest calculation other than the interest rate (*see Denio v State of New York, supra* at 163).

We, of course, are obligated to follow the holdings of the Court of Appeals. Our duty in that regard, however, extends only to issues necessarily decided by that Court (*see Robinson Motor Xpress, Inc. v HSBC Bank, USA,* 37 AD3d 117 [2006]; *Adirondack Trust Co. v Farone,* 245 AD2d 840, 842 [1997]; *People v*

*Bourne,* 139 AD2d 210, 216 [1988]; *Monroe v City of New York,* 67 AD2d 89, 103 [1979]; *cf. Art Masters Assoc. v United Parcel Serv.,* 77 NY2d 200, 208 [1990]; *Matter of Knight-Ridder Broadcasting v Greenberg,* 70 NY2d 151, 160 [1987]). Since the issue of the date on which the plaintiff's entitlement to interest commenced was not before the Court of Appeals in *Denio, Denio* is not authority with respect to that point.

The No-Fault Law altered the automobile liability dynamic dramatically. Prior to the adoption of the No-Fault Law, a plaintiff in an automobile liability action was treated no differently from a plaintiff in any other negligence case. After establishing the elements of a negligence claim, i.e., that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the defendant's breach was a proximate cause of the plaintiff's injuries, the only burden remaining upon the plaintiff was to establish the amount of his or her damages (*see Pfaffenbach v White Plains Express Corp.,* 17 NY2d 132 [1966]). The No-Fault Law provides, however, that "there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss" (Insurance Law § 5104 [a]). It thus interposes between the plaintiff and the entry of judgment the additional requirement of establishing serious injury. Without proof of serious injury, the plaintiff cannot recover (*see Licari v Elliott,* 57 NY2d 230 [1982]; *Star v Badillo,* 225 AD2d 610, 611 [1996]).

My colleagues read this statutory requirement as having little, if any, effect upon when "the plaintiff's right to be compensated for the damages he or she sustained becomes fixed in law" (*Love v State of New York, supra* at 544). As a result, they conclude that even in a no-fault case, the determination that the defendant was negligent marks the commencement of prejudgment interest, without regard to when the serious injury threshold is satisfied. This conclusion, however, misperceives the nature of the plaintiff's case under the No-Fault Law and is inconsistent with both the language of the statute and the manner in which the statute has been consistently interpreted.

The explicit language of the No-Fault Law is sufficient to resolve this debate. As noted, the statute provides that "there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss" (Insurance Law § 5104 [a]). The statute thus, by its terms, abolishes the plaintiff's right of recovery; it does not merely limit the damages that the plaintiff may recover. If a plaintiff has no

right of recovery without establishing serious injury, it is difficult to understand how "the plaintiff's right to be compensated for the damages he or she sustained becomes fixed in law" (*Love v State of New York, supra* at 544) until serious injury has been established.

Even if the statutory language in this regard can be considered ambiguous, however, any doubt as to the effect of the statute has been removed by the fact that from the statute's earliest days, the Court of Appeals has described it as a bar to liability, rather than as a limitation on damages. Just two years after the enactment of the No-Fault Law, the Court of Appeals upheld the statute's constitutionality against a due process challenge, holding that "the law now challenged provides more than an adequate substitute for the cause of action it abrogates" (*Montgomery v Daniels,* 38 NY2d 41, 58 [1975]). In the same decision, the Court of Appeals held that the statute did not deprive plaintiffs of their constitutional right to a jury trial (*see* NY Const, art I, § 2) because that constitutional guaranty applies only "if the plaintiff has a claim to assert" and the statute "properly abrogates the claim in part, [and] to that extent there remains nothing to which the right to trial by jury may attach" (*Montgomery v Daniels, supra* at 66-67). More recently, in *Pommells v Perez* (4 NY3d 566 [2005]), the Court of Appeals described the effect of the statute as follows: "Only in the event of 'serious injury' as defined in the statute, can a person initiate suit against the car owner or driver for damages caused by the accident" (*id.* at 571).

In line with these repeated characterizations of the statute as depriving a plaintiff of a right to recover in the absence of proof of serious injury, the Court of Appeals has consistently treated the failure to establish serious injury as barring claims, not merely as limiting damages. Thus, in *Licari v Elliott* (*supra* at 240), the Court of Appeals held that in the absence of proof of serious injury, the No-Fault Law requires dismissal of the claim for failure to establish a prima facie case, thereby precluding submission of the matter to the jury. In reaching this conclusion, the Court found that "[t]acit in this legislative enactment is that any injury not falling within the new definition of serious injury is minor and a trial by jury is not permitted under the no-fault system" (*Licari v Elliott, supra* at 235) and that satisfaction of the serious injury threshold is necessary to "permit a plaintiff to maintain a common-law cause of action in tort" (*Licari v Elliott, supra* at 237). Following *Licari,* the Court

of Appeals has held that the complaint is properly dismissed where the plaintiff fails to make out a prima facie case of serious injury (*see Scheer v Koubek,* 70 NY2d 678, 679 [1987]) because the plaintiff "has not met the statutory threshold for maintaining this action" (*Gaddy v Eyler,* 79 NY2d 955, 957 [1992]).

My colleagues in the majority ignore these decisions. Instead, they focus on the dichotomy between "liability" and "damages," concluding that because serious injury is tried in the damages phase of a bifurcated trial, the plaintiff's entitlement to interest, accruing upon "liability," has already been established. Such analysis, however, ignores the reasoning of *Love* in preference for its phraseology.

Outside the context of a no-fault case, it is entirely consistent to say that "the plaintiff's right to be compensated for the damages he or she sustained becomes fixed in law" (*Love v State of New York, supra* at 544) upon a jury verdict on common-law liability, as the *Love* court did. To read *Love* as holding that interest runs from the same point in a no-fault case simply because that determination is labeled "liability" and serious injury is tried with damages ignores the fact that under the clear language of the No-Fault Law and the consistent holdings of the Court of Appeals the failure to satisfy the no-fault threshold defeats not just the plaintiff's damages, but the plaintiff's claim.

The cases decided under the No-Fault Law draw a clear distinction between the usual elements of a plaintiff's negligence case—duty, breach, and proximate cause—and the serious injury threshold. Consistent with this distinction, we held in *Pena v Castillo* (306 AD2d 519 [2003]), for example, that the granting of plaintiff's motion for summary judgment as to the negligence of the defendant did not preclude the defendant from subsequently moving for summary judgment dismissing the complaint for failure to establish serious injury (*Pena v Castillo, supra* at 520). Similarly, in *Sheehan v Marshall* (9 AD3d 403 [2004]), we held that where summary judgment is properly granted on "liability," but the issue of serious injury is not raised, the issue remains for trial. That, of course, is what happened here. Most recently, in *Abbas v Cole* (44 AD3d 31 [2007] [decided herewith]) we have held that where the plaintiff obtains a default judgment in a no-fault case without either pleading the facts that underlie the plaintiff's serious injury claim or establishing serious injury in the motion for the default judgment, the issue of serious injury must be addressed at the

inquest. Along the same lines, we have recognized that a stipulation of "liability" does not necessarily include an admission that the plaintiff has suffered a serious injury (*see Taylor v Dell Coffee Servs.*, 306 AD2d 460 [2003]). We, therefore, have dismissed a complaint when the plaintiff is prevented by an order of preclusion from establishing serious injury (*see Rahman v MacDonald*, 17 AD3d 438, 439 [2005]).

Most telling, however, where the issue does reach the jury, but we find on appeal that the jury's verdict in favor of the plaintiff on the issue of serious injury cannot stand, we do not reduce the amount of the verdict to $0 but, rather, we dismiss the complaint (*see Rodriguez v Virga*, 24 AD3d 650, 651-652 [2005]). The majority dismisses this point as a distinction without a difference on the basis of its theorem that the effect of the No-Fault Law is to reduce the damages of a plaintiff who cannot prove serious injury to $0. In such circumstances, the argument follows, the plaintiff who may have proved some damages, but not damages rising to the level of serious injury, is nonetheless nonsuited because of the reduction to zero, by operation of the No-Fault Law, of those damages that the plaintiff did prove. If this concept, which has never before been articulated, had been the basis for our decision in *Rodriguez*, however, presumably we would have said so. Instead, we simply dismissed the complaint as a matter of law for failure to prove serious injury. It is hard to see this as anything other than a reflection of our understanding, based upon the language of the No-Fault Law and the legion of cases construing it that have been discussed above, that the absence of serious injury does not merely affect the plaintiff's damages, but defeats the plaintiff's claim, and thereby precludes the plaintiff from establishing an entitlement to recovery that is "fixed in law," as the plaintiff must in order for prejudgment interest to commence.

This distinction drives the analysis with respect to the accrual of prejudgment interest. Where the plaintiff's action is subject to the No-Fault Law, the determination that the defendant has been negligent does not, in itself, establish the plaintiff's entitlement to recovery because the No-Fault Law additionally requires proof that the plaintiff suffers from a serious injury (*see Licari v Elliott, supra*; *Star v Badillo, supra*). As a result, the plaintiff's right to recover is not "fixed in law" on the date of the negligence determination, but, rather, on the date on which both negligence and serious injury are established.

Thus, the plaintiff cannot be entitled to prejudgment interest under *Love* until the latter date.

Our holdings in *Perez v State of New York* (215 AD2d 740 [1995]) and *Zecca v Riccardelli* (293 AD2d 31 [2002]) do not compel a contrary result. To begin with, as noted above, the characterization of the serious injury determination as being one of "liability" or "damages" does not resolve the issue. The issue is not cast by *Love* in those terms. Rather, "what is dispositive on this point is when the plaintiff's right to be compensated for the damages he or she sustained becomes fixed in law" (*Love v State of New York, supra* at 544). Neither *Perez* nor *Zecca* addresses that issue or even provides a guidepost for deciding it.

*Perez* held only that the trial court, having advised the claimant that no medical testimony would be permitted during the liability phase of the trial, erred in granting the State's motion to dismiss at the close of the claimant's case because of the plaintiff's failure to establish serious injury. To be sure, we noted that "[a]s a general principle, the liability phase of a bifurcated trial is not the proper juncture at which to adjudicate issues regarding the severity of the injuries" and that "[i]ssues which pertain to the extent of the injuries suffered by a plaintiff, including whether a plaintiff suffered a serious injury . . . should generally be left for the damages phase of the trial" (*Perez v State of New York, supra* at 741-742). What these comments address, however, is the manner in which a no-fault trial is to be conducted. Absent from the analysis is any conclusion that serious injury is conceptually an element of damages, rather than liability, or that the plaintiff's entitlement to recovery can be "fixed in law" prior to the offer of such proof.

*Zecca* was a summary judgment case. The issue in *Zecca* was whether summary judgment in favor of the plaintiff on the issue of "liability" necessarily included summary judgment in the plaintiff's favor as to serious injury. Rejecting what was then the position of our colleagues in the First Department (*see Maldonado v DePalo,* 277 AD2d 21 [2000]), we held that it did not (*see Zecca v Riccardelli, supra* at 34-35; *see also Canfield v Beach,* 305 AD2d 440, 442 [2003]; *Coumbes v Taylor,* 298 AD2d 351, 352 [2002]). Our conclusion rested, however, not on the argument that serious injury is an element of damages, but upon the process by which summary judgment motions are made, opposed, and addressed.

Specifically, we found in *Zecca* that since the plaintiff had not raised the issue of serious injury in the moving papers, the plaintiff had not established his entitlement to judgment as a matter of law with respect to that issue, as the moving party is required to do in order to prevail on a motion for summary judgment (*see Zecca v Riccardelli, supra* at 35; *see also Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). Solely as a result of that failure of proof, the issue of serious injury was not resolved on the summary judgment motion and, consequently, remained for trial.

Thus, neither *Perez* nor *Zecca* addresses, let alone establishes, that serious injury is an element of damages, rather than liability. In order to reach the conclusion that they do, and then to extrapolate that our Court is "committed" by these decisions to finding that a no-fault plaintiff's entitlement to recovery is "fixed in law" before he or she offers any proof of serious injury, requires a reading of these cases that is beyond expansive. Stare decisis depends upon a careful exegesis of our decisions to determine what we have necessarily held in light of the issues required to be decided by the particular case. Such a reading of *Perez* and *Zecca* compels the conclusion that they are related tangentially, at best, to the issue that is before us here. To say, in the absence of any attempt to rebut this conclusion, that the refusal to read these cases otherwise is a violation of our stare decisis obligation, is simply incorrect. It is no offense to our stare decisis obligation, therefore, to disregard *Perez* and *Zecca* in reaching, on the basis of the analysis that has been set forth, the same conclusion as our colleagues in the Fourth Department, that prejudgment interest in a no-fault case does not commence until serious injury is established (*see Ruzycki v Baker*, 301 AD2d 48, 51 [2002]; *Manzano v O'Neil*, 298 AD2d 829 [2002]).

The conclusion that a no-fault plaintiff has not established that his or her right to recover is "fixed in law," and consequently is not entitled to prejudgment interest, until he or she has satisfied the serious injury threshold does not, of course, prevent a plaintiff from recovering interest prior to the damages verdict. A plaintiff in a no-fault case can establish serious injury prior to trial in the same manner as any other element of his of her case. If the defendant fails to appear or answer, the plaintiff is entitled to a default judgment (*see* CPLR 3215 [a]). Where the issue of serious injury has been resolved by the mo-

tion for a default judgment, the plaintiff need only establish the amount of damages at the inquest (*see Abbas v Cole, supra; Beresford v Waheed,* 302 AD2d 342 [2003]). Where the defendant does answer, the plaintiff may nevertheless establish serious injury without a trial by moving for partial summary judgment on the issue (*see* CPLR 3212 [e]; *Hillman v Eick,* 8 AD3d 989 [2004]; *Mustello v Szczepanski,* 245 AD2d 553 [1997]). However, when the plaintiff establishes the elements of negligence plus serious injury, it is then that his or her entitlement to recovery "becomes fixed in law" and, under *Love,* prejudgment interest begins to run.

I do not see the existence of issues with respect to the seat-belt defense or proximate cause as requiring a different result. The seat-belt defense (*see* Vehicle and Traffic Law § 1229-c [8]) is, by its terms, only an issue of damages (*see Spier v Barker,* 35 NY2d 444, 450 [1974]; *Stein v Penatello,* 185 AD2d 976 [1992]). It is, therefore, irrelevant to the plaintiff's proof of serious injury and, consequently, to the date on which "the plaintiff's right to be compensated for the damages he or she sustained becomes fixed in law" (*Love v State of New York, supra* at 544). Although proof that the defendant's conduct is the proximate cause of the plaintiff's injuries is, by contrast, a necessary element of the plaintiff's case, there is no authority that I have been able to locate, and none is cited by my colleagues, to establish that a plaintiff is entitled to recover prejudgment interest before establishing that element. Indeed, even the conclusion to which my colleagues ascribe would not allow a plaintiff to recover prejudgment interest without such proof, since proximate cause is a necessary element of common-law liability (*see Martin v Herzog,* 228 NY 164, 170 [1920]).

The contention that no-fault plaintiffs will be treated differently than other personal injury plaintiffs if they are not entitled to prejudgment interest upon establishing the defendant's common-law liability also provides no cogent reason, in my view, to depart from the rule established in *Love.* The distinction with respect to the elements necessary to fix a defendant's obligation to pay damages was drawn by the Legislature when it enacted the No-Fault Law. The conclusion that prejudgment interest does not accrue until serious injury is established follows directly from the application of the rule established in *Love* to that distinction. We are not at liberty to disregard it (*see Patrolmen's Benevolent Assn. of*

*City of N.Y. v City of New York,* 41 NY2d 205 [1976]; *Bender v Jamaica Hosp.,* 40 NY2d 560 [1976]; *New Amsterdam Cas. Co. v Stecker,* 3 NY2d 1 [1957]; *Meltzer v Koenigsberg,* 302 NY 523 [1951]), even if no-fault plaintiffs will be treated differently as a result.

Moreover, I am not persuaded that no-fault plaintiffs in a jurisdiction such as ours, where bifurcation is the rule in negligence cases (*see Martinez v Town of Babylon,* 191 AD2d 483, 484 [1993]; CPLR 603; 22 NYCRR 202.42), suffer unfairly when compared to similarly-situated no-fault plaintiffs in jurisdictions that prefer unified trials. Even in this Department, not all no-fault trials will be bifurcated, since unified trials remain appropriate where the nature of the injuries has "an important bearing" on the issue of liability (*see* 22 NYCRR 202.42 [a]; *Pasquaretto v Cohen,* 37 AD3d 440 [2007], *lv denied* 9 NY3d 801 [2007]). Even when the trial is bifurcated, the damages phase will generally proceed immediately after the liability verdict, before the same judge and jury (*see* 22 NYCRR 202.42 [e]). As a result, any delay in the accrual of prejudgment interest resulting from the need to prove serious injury will be minimal. Bifurcation, moreover, often provides benefits to plaintiffs that are unavailable where unified trials are the rule, such as being able to establish liability, and thereby greatly enhance one's settlement posture, without expending the funds necessary to provide expert medical testimony.

In any event, the issue here is not the date on which it is fair for a plaintiff's prejudgment interest to commence in a no-fault case. The issue is what that date is in accordance with the undisputed legal standard. That standard defines prejudgment interest as running from the date on which "the plaintiff's right to be compensated for the damages he or she sustained becomes fixed in law" (*Love v State of New York, supra* at 544). Here, my colleagues in the majority would hold that standard to have been met on the date summary judgment was awarded to the plaintiff, despite the fact that the plaintiff had not yet introduced any evidence demonstrating that she had suffered a serious injury. Since, in the absence of such proof, the plaintiff could not prevail, her entitlement to recover cannot have "become fixed in law" at that time and, under *Love,* prejudgment interest was not then available to her. The second amended judgment should therefore be affirmed.

MILLER, J.P., and KRAUSMAN, J., concur with DILLON, J.; SPOL-ZINO and FISHER, JJ., dissent and vote to affirm the amended judgment in a separate opinion by SPOLZINO, J.

Ordered that the second amended judgment entered December 23, 2005, is reversed, on the law, with costs, the defendants' motion to modify the date of accrual of interest is denied, and the amended judgment entered June 21, 2005, is reinstated.